UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 9:25cv80781**

MICHAEL PECONGE,

      Plaintiff,

vs.

AMERIFLEX and
AETNA HEALTH INSURANCE COMPANY,

      Defendants.

_____/

## **COMPLAINT**

Plaintiff, MICHAEL PECONGE, hereby sues Defendants, AMERIFLEX and

AETNA HEALTH INSURANCE COMPANY, based on the following:

### **PARTIES, JURISDICTION, AND VENUE**

1.    This is a civil action to recover benefits due to Plaintiff under the terms

of a group health plan pursuant to 29 U.S.C. §1132, for promissory estoppel, for

statutory penalty for the failure to produce plan documents pursuant to 29 U.S.C.

§1132(c), and for attorneys' fees and costs.

2.    Plaintiff is a natural person residing in Palm Beach County, Florida and

is, at all times, *sui juris*.

3.    Defendant AETNA HEALTH INSURANCE COMPANY ("AETNA")

is an insurance company authorized to do and doing business in Palm Beach County,

Florida.

1

4.      Defendant AETNA issued to Plaintiff the subject health insurance coverage (the "Plan"), which was the Plan that was to cover Plaintiff during the relevant time of this case.

5.      The Plan is an employee benefits plan under 29 U.S.C §1001 *et seq.*, of the Employment Retirement Income Security Act of 1974 ("ERISA").

6.      At all relevant times, Plaintiff was a Plan participant.

7.      At all relevant times, Defendant AETNA was an insurance company licensed to do business, and doing business, in Palm Beach County, Florida.

8.      Defendant AMERIFLEX is a health plan administrator authorized to do and doing business in Palm Beach County, Florida.

9.      Defendants breached the Plan by failing to pay for medical services rendered in, and medical expenses incurred in, Palm Beach County, Florida.

10.     Plaintiff seeks recourse under the terms of ERISA and the Plan for the benefits due pursuant to 29 U.S.C. §1132(a)(1)(B).

11.     Plaintiff seeks recourse under the terms of ERISA and the Plan for the benefits due pursuant to 29 U.S.C. §1132(a)(1)(A) and 29 U.S.C. §1132(c).

12.     This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

13.     Venue is appropriate under 29 U.S.C. §1132(e)(2) (Palm Beach County, Florida is the location where the breach took place).

14.     Pursuant to 29 U.S.C. §1132(g) and section 627.428, Florida Statutes, Plaintiff also seeks reimbursement of reasonable attorneys' fees and costs.

## FACTUAL ALLEGATIONS

15.     Plaintiff, MICHAEL PECONGE ("Mr. Peconge") was employed by Harris Freeman & Co., Inc. (Harris Freeman & Co., Inc. will be referred to hereafter as "Plan sponsor"), until his termination on or about 6.17.2021.

16.     During the time of his employment and at the time of his termination, Mr. Peconge, through Plan sponsor, was covered by a group health insurance policy issued by Defendant AETNA.

17.     Pursuant to 29 U.S.C. 1161(a), the plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

18.     "Continuation coverage as defined and described by 29 U.S.C. 1161 and 29 U.S.C. 1162.

19.     At the time of his termination, the Plan sponsor offered to Mr. Peconge the option to continue his group health coverage pursuant to the Federal Consolidated Omnibus Budget Reconciliation Act health benefit provisions program ("COBRA").

20.     As of the time of his termination, Mr. Peconge elected to continue his group health plan coverage with Aetna and through his Plan sponsor.

21.     29 U.S.C. 1162(2) provides the Period of coverage:

The coverage must extend for at least the period beginning on the date of the qualifying event and ending not earlier than the earliest of the following:

(A) Maximum required period

(i) General rule for terminations and reduced hours

In the case of a qualifying event described in section 1163(2) of this title, except as provided in clause (ii), the date which is 18 months after the date of the qualifying event.

22.     29 U.S.C. 1163(2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

23.     A qualifying event, i.e. termination of employment, occurred on or about 06.17.2021.

24.     Continuation coverage under the group plan was administered Defendant AMERIFLEX and coverage provided by Defendant AETNA.

25.     Mr. Peconge's health coverage was allegedly set to end on 12.17.2022.

26.     However, Mr. Peconge was scheduled for a surgical procedure to take place on 12.27.2022 with Dr. Michael Leighton ("Dr. Leighton") from Palm Beach Orthopedic Institute ("PBOI") with the procedure to be performed at Jupiter Medical Center ("JMC").

27.     On 12.13.2022, Mr. Peconge contacted Defendant AMERIFLEX to clarify whether coverage was set to expire on 12.17.2022 or if it would extend through to the end of the month (i.e. through 12.31.2022).

28.     Defendant AMERIFLEX recorded the 12.13.2022 call and a transcript of the call is attached as **Exhibit A**.

29.     On the phone call, Mr. Peconge spoke to an agent of Defendant AMERIFLEX who stated and confirmed that coverage would extend beyond the original date and through to 12.31.2022, covering the surgical procedure.

30.     On the phone call, Defendant AMERIFLEX *assured* Mr. Peconge that coverage would extend through to 12.31.2022.

31.     Mr. Peconge relied on this representation and proceeded with the surgical procedure knowing that he had health insurance coverage.

32.     Prior to the surgical procedure, Mr. Peconge reconfirmed through Defendant AMERIFLEX's Web Health Support Center member's portal that he had active coverage through 12.31.2022.

33.     Furthermore, on 12.15.2022 PBOI electronically confirmed through Defendant AETNA's plan portal that Mr. Peconge had an active policy.

34.     PBOI relied on the confirmation health insurance coverage to bill Defendant AETNA for its services.

35.     Dr. Leighton also relied on the confirmation of coverage to bill Defendant AETNA for its services.

36.     On 12.21.2022, Defendant AMERIFLEX sent letter attempting to end the coverage through the mail, however it was not received until after the procedure.

37.     Additionally, on 12.21.2022 JMC confirmed electronically with Defendant AETNA that Mr. Peconge did have active policy coverage. *See* **Exhibit B**, screen printout of coverage confirmation after 12.17.2022.

38.     JMC relied on confirmation of coverage to bill Defendant AETNA for its services.

39.     The Plan paid $57.74 for prescription medication dated 12.21.2022.

40.     On 12.22.2022, Mr. Peconge had a medical visit to meet with Dr. Robert C. Greer, which was later partially paid for by Defendant AETNA on 01.09.2023.

41.     Upon information and belief, on 12.27.2022 (the day of the surgical procedure) JMC reconfirmed that Mr. Peconge possessed an active health insurance

policy and cleared him for surgery with Dr. Leighton, who successfully completed the planned procedure.

42.    After the completion of the surgical procedure, medical bills were submitted by the medical providers to Defendant AETNA.

43.    The Plan paid $8.02 to Jupiter Imaging & Associates for services on 12.27.2022.

44.    The Plan paid $29.00 to Treasure Coast Pathology, P.A. for services on 12.28.2022.

45.    On 01.23.2023, the Plan paid $1,445.78 for Dr. Leighton's charges related to his 12.27.2022 services.

46.    However, shortly after but on a date uncertain, Mr. Peconge learned only through his medical providers that medical bill payments were being withdrawn and reversed.

47.    29 C.F.R. 2560.503-1(f)(2)(iii)(B) provides as follows: "In the case of a post-service claim, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination within a reasonable period of time, but not later than 30 days after receipt of the claim."

48.    29 C.F.R. 2560.503-1(g)(1) provides as follows:

Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR

7

2520.104b-1(c)(1)(i), (iii), and (iv), or with the standards imposed by 29 CFR 2520.104b-31 (for pension benefit plans). The notification shall set forth, in a manner calculated to be understood by the claimant—

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan—

> (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

> (B) If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

49.     Mr. Peconge did not receive any actual denials or explanations of benefits for most providers and only heard of the denials from the medical providers themselves.

50.     Defendant, AETNA, refused to continue paying medical bills covered under the confirmed health insurance plan and demanded for paid bills to be reversed.

51.     On 02.20.2023, Mr. Peconge and "Erin" on behalf of AETNA called Defendant AMERIFLEX; during the conversation, AMERIFLEX confirmed that Mr. Peconge was promised coverage through 12.31.2022, provided him a ticket number for the call, and advised that he would receive a follow-up email regarding the issue.

52.     Mr. Peconge did not receive the promised follow-up email.

53.     On 02.27.2023, Mr. Peconge and AETNA's Erin again called Defendant AMERIFLEX and spoke with Jules, who confirmed the prior approval of coverage through 12.31.2022, indicated that the 02.20.2023 ticket was still under review, and indicated that "we can actually file an appeal".

54.     On 02.28.2023, Mr. Peconge and AETNA's Erin again called Defendant AMERIFLEX and spoke to Robin who repeatedly denied requests for the bills to be paid despite verbal requests to provide the relied-upon coverage.

55.     On 03.01.2023, Mr. Peconge again called Defendant AMERIFLEX to again request that AMERIFLEX reconsider its changed coverage; AMERIFLEX indicated that the pending 02.20.2023 ticket was still pending.

56.     Defendant AETNA blamed Defendant AMERIFLEX, asserting that Defendant AMERIFLEX was in full control of the plan, coverage, payments, and denials.

57.     On 03.07.2023, approximately 3 months after the surgery, Defendant AMERIFLEX emailed Mr. Peconge claiming that COBRA coverage ended on a specific day at 18 months, not to the last day of the month.

58.     Defendant AMERIFLEX failed to provide Mr. Peconge notification of benefit determination as required by 29 C.F.R. 2560.503-1(g)(1).

59.     Defendants failed to properly notify Mr. Peconge of his rights to appeal beyond the multiple phone calls already made, including the timeframe within and manner in which to submit an appeal.

60.     On 03.14.2023 and pursuant to 29 C.F.R. 2560.503-1(h)(2)(iii), Mr. Peconge's counsel sent to Defendant AMERIFLEX a demand for documents related to the claim.  *See* letter attached hereto as **Exhibit C**.

61.     On 05.25.2023, Mr. Peconge sent to Defendant AETNA and to Plan Sponsor letters requesting the Plan documents.

62.     On 07.31.2023 and unbeknownst to Mr. Peconge, Defendant AETNA allegedly began a "reconsideration" process; however, Mr. Pecogne and Mr. Pecogne's counsel received no notice, communication, or any knowledge of this process and its results (Defendant AETNA then sent the results 6 months later to CVS pharmacy instead of to Mr. Pecogne)

63.     On 10.30.2023, Defendant AMERIFLEX confirmed to Mr. Peconge, by phone, that they do have confirmation of the 12.13.2023 phone call assuring him of coverage through 12.31.2022 and advising Mr. Peconge that they will now not, in fact, extend the coverage or pay the bill.

64.     On 12.06.2023 Mr. Peconge observed through Defendant AETNA's client portal that past coverage information was modified to no longer show coverage past 12.17.2022.

65.     This attempt at concealment is revealed through the payments of Dr. Leighton's requested claims on 01.23.2023 being paid for by Defendant AETNA.

66.     On 12.22.2023 and without notifications from AETNA or from AMERIFLEX, Mr. Peconge pursued additional administrative remedies by appealing Defendant AETNA's denial of coverage and highlighting that Mr. Peconge has not received any coverage determination letters/documents explaining the reversal of coverage despite prior verbal confirmation, reversal of payments, and rights to appeal any decision. *See* **Exhibit D**.

67.   On 12.22.2023, Mr. Peconge sent an email correspondence to both Defendant AETNA and Defendant AMERIFLEX, requesting previously requested and ignored documents, requesting coverage, and the appeal of the withdrawn medical bill payments.

68.   Defendant AETNA asserts that the appeal was received on 01.05.2024 despite being submitted 12.22.2023.

69.   Defendant AETNA further asserts that they sent a reply 01.07.2024, which was never received.

70.   On 01.17.2024, Defendant AETNA sent to medical provider Accountable Care Hospitalist Group correspondence denying the provider's appeal because the appeal was not submitted within 60 days of a 07.31.2023 "reconsideration" of the provider's claim.

71.   However, Mr. Peconge had received no written denial to this provider, had no knowledge of the 07.31.2023 "reconsideration," and did not have Plan documents, despite request.

72.   It is unclear whether the 01.17.2024 correspondence, originally sent to only the provider, was in response to a provider appeal (that Plaintiff was not provided) or Plaintiff's 12.21.2023 demand/appeal.

73.   On 02.20.2024, Mr. Peconge's counsel exchanged email correspondences regarding missing documentation from Defendant AETNA.

74.     On 03.07.2024 Mr. Peconge continued to pursue all administrative remedies and sent to Defendant AETNA and Defendant AMERIFLEX written correspondences with a summary of the requested information and documentation that continues to be withheld.  *See* letter attached as **Exhibit E**.

75.     On 03.08.2024, Mr. Peconge received from Defendant AMERIFLEX a response to his request for claim documentation.

76.     Defendant AMERIFLEX, for the first time, produced recordings of calls made with Mr. Peconge; however, Defendant AMERIFLEX did not produce any 29 C.F.R. 2560.503-1(g)(1) compliant explanations of benefits/review for each of the bills related to Mr. Peconge's procedure.

77.     Following the absence of requested documents from Defendant AMERIFLEX on 03.08.2024, Mr. Peconge sent to Defendant AETNA email correspondence reminding AETNA of the 12.22.2023 demand letter and providing a link to the newly received 12.13.2022 phone call recordings in which Defendant AMERIFLEX promised coverage.

78.     Mr. Peconge received no response and had to follow up on 03.12.2024.

79.     Defendant AETNA acknowledged the email on 03.12.2024 but no information or documentation provided.

80.     On 03.25.2024, Mr. Peconge followed up on the missing documents in which Defendant AETNA replied to ask for Mr. Peconge's policy Plan information.

81.    On 03.26.2024, Defendant AETNA copied Mr. Peconge's counsel on an email acknowledging the fact that Mr. Peconge was advised that his coverage under the AETNA plan ran through 12.31.2022, that Mr. Peconge relied on this representation, and that Mr. Peconge proceeded with the surgical procedure knowing that he had health insurance coverage.

82.    Furthermore on 03.26.2024, Defendant AETNA confirmed via email that requested documents had been sent to the Plan sponsor and that "the term date is simply managed by the plan sponsor, in this case Harris Freeman and not Aetna."

83.    On 04.09.2024, Defendant AETNA sent documents solely relating to dental coverage, after which Mr. Peconge had to remind Defendant AETNA that the missing documents did not relate to a dental plan.

84.    On 04.11.2024 and for the first time, Defendant AETNA sent through its Secure Messaging Portal Mr. Peconge's Plan documents.

85.    On 04.19.2024, Mr. Peconge submitted another yet appeal on Defendants' adverse benefit determination. *See* **Exhibit F**.

86.    As of 04.19.2024, Mr. Peconge was not made aware of any prior denials with their accompanying rights to appeal.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. 1132(a)(1)(B))

87.    Plaintiff re-alleges paragraphs 1 through 86 as if fully set forth herein.

88.     The Plan at issue is in the possession of Defendants.

89.     Defendant AETNA produced multiple different Plan documents without identifying which specific document applied to Plaintiff's coverage.

90.     Plaintiff incorporates herein by reference the specific Plan document(s)/contract to be identified by Defendants.

91.     ERISA imposes higher-than-marketplace quality standards on insurers, and it sets forth a special standard of care upon plan fiduciaries such as AETNA and AMERIFLEX, to, *inter alia*, "discharge [its] duties with respect to a plan solely in the interests of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." *See* 29 U.S.C. § 1104(a)(1).

92.     A plan participant may bring a civil action to recover benefits due to him under the terms of his plan.  *See* 29 U.S.C. § 1132(a)(1)(B).

93.     ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that "every employee benefit plan shall" provide a "full and fair review" of decisions for denying claims, including to engage in meaningful dialogue in the pre-litigation appeal process. *See* 29 U.S.C. § 1133(2).

94.     Defendants' acknowledge the 12.13.2022 recorded assurance to provide coverage for the subject medical procedures and Defendant AETNA

acknowledged that Plaintiff relied on the assurance; yet, to date, both Defendants continue to deny coverage and were unresponsive to Plaintiff's written appeals.

95.    Promissory      estoppel      may      be      utilized      to      create insurance coverage where to refuse to do so would sanction fraud or other injustice.

96.    Such injustice may be found where the promisor reasonably should have expected that its affirmative representations would induce the promisee into action or forbearance substantial in nature, and where the promisee shows that such reliance thereon was to his detriment.

97.    The doctrine of equitable estoppel generally is applicable in actions brought pursuant to ERISA, including the COBRA amendments thereto. *See National Companies Health Benefit Plan v. St. Joseph's Hospital*, 929 F.2d 1558 (11th Cir.1991).  To prevail on a claim for equitable estoppel under federal common law, the plaintiff must prove that

(1) the party to be estopped misrepresented material facts;

(2) the party to be estopped was aware of the true facts;

(3) the party to estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it;

(4) the party asserting the estoppel did not know, nor should it have known, the true facts; and

(5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*Id*. at 1572.

98.    Defendant AMERIFLEX misrepresented to Mr. Peconge the material fact of whether his coverage would extend through at least the date of his scheduled surgery.

99.    Defendant AMERIFLEX knew or should have known that coverage did not extend through 12.31.2022.

100.   Defendants had reason to believe, and have acknowledge in email correspondence, that Mr. Peconge would rely on coverage information to proceed with his surgery.

101.   Mr. Peconge did not know the "true fact" because of the misrepresentation made (Mr. Peconge called prior to surgery for the sole purpose of clarifying whether coverage would extend through 12.31.2022).

102.   Mr. Peconge reasonably relied on AMERIFLEX' assurance of coverage but, because of the change in coverage position, is now stuck with medical charges related to the surgery.

103.   Defendants breached their fiduciary duties to Mr. Peconge when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in Mr. Peconge's interest and for the exclusive purpose of providing

benefits to Mr. Peconge, as an ERISA participant of the Plan, and to provide a full and fair review of Mr. Peconge's claims.

104.   Defendants further breached their covenants to Plaintiff by failing to comply with the terms of the Plan and ERISA despite assurances to do so.

105.   Defendants' actions in failing to provide coverage for Mr. Peconge's medically necessary treatment, after AMERIFLEX assured Mr. Peconge that his coverage would be in effect through 12.31.2022, are in violation of the terms of the Plan and Defendant's promise.

106.   As a direct and proximate result of such breach, Plaintiff Mr. Peconge is entitled to a recovery of all benefits due and owing to them pursuant to the Plan and ERISA.

107.   Mr. Peconge reasonably pursued all administrative remedies prior to filing this lawsuit.

108.   Mr. Peconge's efforts to demand coverage, even after confirming that he was advised he would have coverage, have been futile.

109.   Mr. Peconge's efforts to appeal Defendants' coverage reversal, even after confirming that he was advised he would have coverage, have been futile.

110.   To date, Mr. Peconge does not know the dates on which adverse benefit determination(s) was/were actually made and was not aware of deadlines to submit appeals.

111.    Any additional effort to submit appeals of Defendants' adverse benefit determination(s), beyond the multiple phone calls, emails, and written submissions, would have been futile.

112.    Mr. Peconge's providers' efforts to obtain coverage and retain payments have been futile.

113.    Mr. Peconge's counsel's efforts to obtain information and documentation necessary to file a complete appeal have been futile.

114.    Furthermore, Mr. Peconge has not received a statutorily compliant denial that explains both the coverage determination and Mr. Peconge's right to appeal.

115.    Despite several formal written requests, there has been no receipt of a "first denial," confirmation of an appeal deadline, a copy of the subject policy, or any coverage documents.

116.    Due to the lack of response to demands for documentation and ignored requests, Mr. Peconge has not been afforded a meaningful opportunity to evaluate the basis/bases for Defendants' position confirming coverage before plan expiration, making payments, and then changing its decisions.

117.    Plaintiff pursued all reasonable administrative remedies prior to filing this lawsuit; otherwise, pursuit of any other administrative remedies have been and further would be futile.

118.   Plaintiff cannot determine when the appeal period actually began because Defendant failed to provide (1) written denials for each bill and (2) Plan documents that specified appeal rights and procedures within any appeal period.

119.   Plaintiff otherwise pursued pre-lawsuit administrative remedies by:

    a.   Personally calling Ameriflex multiple times to gather information about their coverage reversal and to challenge/appeal their coverage reversal;

    b.   Submitting to Ameriflex, to Aetna, and to Harris Freeman demands for Plan documents;

    c.   Demanding on 12.22.2023 that payment be issued for the pending claim for services performed through 12.31.2022;

    d.   Demanding on 03.07.2024 that Plan and claim documentation be provided;

    e.   Demanding on 04.19.2024 that Defendants again reconsider its claim decisions.

120.   To date, neither Defendant provided a written response to Plaintiff's appeal.

121.   WHEREFORE, the Plaintiff seeks relief as follows:

    a.   Judgement in the total amount that is owed under the terms of the Plan for Mr. Peconge's medically necessary and/or in network

services performed on or before December 31, 2022, plus pre and post-judgement interest to the date of payment, pursuant to U.C.A. §15-1-1;

b.  Attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g);

c.  Trial by jury; and

d.  For such further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

**(Request for statutory penalties under 29 U.S.C. 1132(a)(1)(A) and (c))**

122.   Plaintiff re-alleges paragraphs 1 through 61 as if fully set forth herein.

123.   As noted herein, AMERIFLEX had the ability to disseminate copies of the Plan and Plan related documents, thereby acting as administrative agent for the Plan

124.   As noted herein, AETNA had the ability to disseminate copies of the Plan and Plan related documents, thereby acting as administrative agent for the Plan.

125.   Plaintiff demanded that Defendants produce copies of Plan documents.

126.   AMERIFLEX, as administrator for the Plan, is obligated to provide to Plan representatives, administrators, participants and/or beneficiaries of the Plan, within thirty (30) days after request, documents under which the Plan was established or operated, including but not limited to any administrative service

agreements between the Plan and AETNA, a copy of the Plan, and all Plan related documents.

127.   AMERIFLEX failed to produce to Plaintiff copies of the Plan and all Plan related documents.

128.   The failure of both AMERIFLEX and of AETNA to produce the documents under which the Plan was established or operated, including but not limited to any administrative service agreements between the Plan and AETNA, a copy of the Plan, and all Plan related documents, as requested by Plaintiff, within thirty (30) days of Plaintiff's first attempt on March 14, 2023, provides the factual and legal bases under 29 U.S.C. §1132(a)(1)(A) and (c) for this court to impose statutory penalties up to $100 per day, from thirty (30) days from the date of the first attempt and letter to the date of the production of the requested documents (on or about March 8, 2024).

129.   In addition, Plaintiff is entitled to a prejudgment interest award pursuant to U.C.A. §15-1-1 as well as attorneys' fees and costs pursuant to 29 U.S.C. §1132(g).

130.   WHEREFORE Plaintiff seeks relief as follows:

    a.   Judgment in the total amount that is owed under the terms of the Plan for Mr. Peconge's medically necessary and/or in network services performed between December 17, 2022 and December 31,

2022 (inclusive), plus pre and post-judgement interest to the date of payment, pursuant to U.C.A. §15-1-1;

b. Judgment for an award of statutory penalties against AMERIFLEX of up to $100 a day after the first thirty (30) days for each instance of AMERIFLEX' failure and/or refusal to fulfill its duties, as administrator of the Plan, to provide the Plaintiff with a complete copy of the Plan and all Plan related documents requested, to which Plaintiff was statutorily entitled;

c. Attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g);

d. Trial by jury; and

e. For such further relief as the Court deems just and proper.


Dated:  June 20, 2025.

/s/ *Christopher W. Kellam*
Christopher W. Kellam, Esq.
Florida Bar No. 59989
Keller Swan, PLLC
759 Parkway Street, suite 202
Jupiter, Florida 33477
(561) 295-5825 Telephone
(561) 766-7054 Facsimile
ckellam@kellerswan.com
erica@kellerswan.com